## WRIGHT v. BATESON.

1. CONTRACTS—DELAY IN PERFORMANCE—DAMAGES—EVIDENCE.

Record in action against a subcontractor on highway project *held,* insufficient to support claim of damages because the contract was not completed by time set in original contract, where it appears a supplemental contract had been entered into, it is concluded both parties were at fault, delay occurred because of developments over which defendant subcontractor did not have full control, record fails to show with sufficient clarity specific items of damage to plaintiff because of the delay or because of alleged breach of contract by the defendant subcontractor, and claims advanced by plaintiff might have been incurred had there been no delay in performance.

2. EVIDENCE—BILL OF PARTICULARS.

A bill of particulars may not be accepted in lieu of proper proof.

3. CONTRACTS—HIGHWAY SURFACING—PLEADING—BILL OF PARTICULARS.

Plaintiff's declaration against subcontractor which did not allege breach of contract with reference to the quantity of materials required by subcontract to be used in highway surfacing, may not recover for breaches of the contract in such particular even though included in bill of particulars.

4. SAME—BREACH OF CONTRACT—DAMAGES.

A plaintiff may not recover for alleged breaches of contract because of the defendants' failure to meet obligations imposed with reference to overruns in use of materials in highway construction, where there is no claim plaintiff was damaged by reason of such breaches.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur, Damages § 47.
[2, 5] 41 Am Jur, Pleading § 273.
[3] 41 Am Jur, Pleading § 387.
[4, 6] 15 Am Jur, Damages § 356.

5. PLEADING—DECLARATION—BILL OF PARTICULARS.

The scope of a declaration may not be broadened by a bill of particulars.

6. CONTRACTS—BREACH OF CONTRACT—DELIVERY OF MATERIALS— EVIDENCE.

Proof as to plaintiff's claim of damage with respect to defendants' failure to schedule delivery of materials under his subcontract respecting highway surfacing *held,* insufficient to permit recovery, where plaintiff exercised active supervision over the operations even to the extent of giving directions to defendants' employees.

Appeals from Ingham; Coash (Louis E.), J. Submitted June 6, 1963. (Calendar Nos. 24, 25, Docket Nos. 49,597, 49,611.) Decided July 17, 1963.

Case by W. C. Wright, doing business as Wright Construction Co., against Ethel I. Bateson, survivor of a copartnership of William E. Bateson and Ethel I. Bateson, doing business as W. E. Bateson Co., subcontractor, and against the Fidelity & Casualty Company of New York, a New York corporation, surety, for breach of contract on highway construction projects. Cross declaration by subcontractor. Judgment for plaintiff. Defendants file separate appeals. Plaintiff cross appeals. Reversed and remanded for entry of judgment for defendants.

*Glassen, Parr, Rhead & McLean (Roland F. Rhead,* of counsel), for plaintiff.

*Eugene H. Christman,* for defendant Bateson.

*Joseph W. Planck,* for defendant Fidelity & Casualty Company of New York.

CARR, C. J. This case has resulted from contracts entered into for the construction of a section of the Ohio turnpike in 1955. Said section comprised approximately 11-1/2 miles of highway and was des-

ignated as projects C-53, C-54, and C-55. The general contractors for the work were Terry & Wright, Inc., and Calumet Paving Company. The plans contemplated two 24-foot strips of Portland cement concrete with a 10-foot bituminous paved shoulder on the outside of each strip and an 8-foot paved shoulder on the inside of each strip of concrete. The concrete work was performed by Calumet Paving Company and is not here involved.

In the construction of the shoulders to the concrete strips there was placed a base of porous material for the purpose of affording drainage as well as support. This portion of the project was performed by Terry & Wright. The added construction required was taken over by plaintiff in the present case, doing business as Wright Construction Company. The contract required the placing of a layer of heavy stone, No. 2 size, on top of the porous base which was required to be properly compacted. Bituminous material was specified, in the contract with the Ohio Turnpike Commission, to be applied to the stone, with a spreading of stone chips and a seal coat. The completion of the work required rolling to leave each shoulder with a smooth surface.

Plaintiff herein was the owner of 49% of the stock in Terry & Wright, Inc. A request for a copy of the contract between him and the general contractors was rejected by his counsel with a statement that there was no written contract. Testimony on the trial by the general superintendent, Orland Jones, of Terry & Wright, was to the effect that the contract was in writing; and. witness Belsheim, the project engineer on the section of the Ohio turnpike in question, likewise so testified, stating in substance that he had approved the contract. The duties and obligations of plaintiff Wright under said contract, whether written or oral, were not shown on the trial of the case.

Under date of June 25, 1955, plaintiff entered into a subcontract with W. E. Bateson Company, a copartnership consisting of William E. Bateson and his wife, Ethel I. Bateson, for the spreading of the bituminous material on the stone required to be laid by plaintiff. Defendant Fidelity & Casualty Company obligated itself as surety on the bond given for the faithful performance of the agreement. Said partnership, hereinafter referred to as Bateson, was required to furnish all equipment necessary for the doing of the work. The agreement further specified that Bateson as subcontractor should schedule the trucks furnished by plaintiff and should remedy any defects in the work performed under the contract. Subdivision 5 of the agreement read as follows:

"There is a maximum or minium amount of bituminous material, choke stone and cover stone set forth in principal contractors' units of work. All quantities used over average will be charged back against subcontractor in their full value."

The agreement did not set forth the maximum and minimum amounts of material referred to in the language quoted, nor do we find it elsewhere in the appendix filed in this Court on appeal. The agreement declared that time of performance was of the essence thereof, and that the work assumed by Bateson should be completed not later than September 1, 1955. However, for reasons that are in dispute, the Bateson subcontract was not fully performed on the date specified. Apparently the general contractors (and the Ohio Turnpike Commission as well) felt that the portion of the project covered by the contract between them and the plaintiff was not progressing satisfactorily. On August 17, 1955, a meeting was held in the office of engineer Belsheim to discuss the situation. Criticism of the progress of the work, and of details in connection

therewith, with particular reference to the stone that had been laid, was met with assurances by Wright as to his intentions to make certain changes and to obtain more adequate supervision. On August 31st following a second meeting was held by representatives of the Turnpike Commission, Mr. Wright, and others. Bateson was not present at either of these conferences. An agreement was reached that, because of the lack of satisfactory progress, the work would be placed entirely under the supervision of Terry & Wright, Inc., and Wright Construction Company would be relieved of responsibility insofar as supervision was concerned. Thereafter Terry & Wright had charge, with its general superintendent, Mr. Jones, acting in behalf of the general contractors until the completion of the work on September 27, 1955.

On September 6, 1955, plaintiff and Bateson entered into a supplemental contract, to which the defendant Fidelity & Casualty Company of New York was a party, referring to supervision of the remaining work by Terry & Wright and further specifying that Bateson, with the partnership equipment and employees, should remain on the job until all work had been finished. Under this supplemental agreement plaintiff Wright was required to furnish such equipment as might be necessary to finish the job by the completion date established by the Ohio Turnpike Commission. Subdivision 4 of this agreement is significant in the instant controversy. It reads as follows:

"Wright shall pay Bateson in accordance with the minimum application unit prices set forth in the subcontract between Wright and Bateson. Bateson shall carry the costs of any 'overrun' over and above the required application. Materials shall not be charged to Bateson. The payments made by Wright to Bateson shall be made on the earned amount per-

formed by Bateson, under the terms of the subcontract, but there shall first be deducted from said payments, equipment rental, cost of supervision and miscellaneous expenses. Payment shall be made weekly. Fidelity & Casualty Company shall pay any deficiencies of costs."

The supplemental agreement also declared that except as modified thereby the subcontract between Wright and Bateson should remain in force and effect. As before noted, the work was completed on September 27, 1955. Thereafter, under date of December 21, 1955, plaintiff presented to Bateson and to claim agents of defendant Fidelity & Casualty Company a list of claims against Bateson aggregating $7,503.45. Included therein were various items apparently covering payments made by plaintiff and also items charged by Terry & Wright, Inc. It appears from the testimony of the representatives of defendant Fidelity & Casualty Company that the claims of plaintiff as set forth in his statement of account were not admitted by Bateson, or by them on behalf of their company. Apparently they had no authority to make any agreement binding their principal. In any event, plaintiff's apparent attempt to procure a voluntary settlement of moneys that he claimed were owing to him by Bateson, or from the surety on Bateson's bond, ended in failure.

The instant suit was started August 27, 1956, plaintiff seeking to recover damages on the theory of breach of contract. Prior to the bringing of the action William E. Bateson died, and Mrs. Bateson, as surviving partner, was named as a defendant with the Fidelity & Casualty Company of New York. After referring to the contract between plaintiff and Bateson, above discussed, the declaration averred the breach thereof in that: (1) performance was not completed by September 1, 1955; (2) nor was sufficient equipment furnished by the partners to per-

form the said contract; and (3) that delivery of materials was not properly scheduled by Bateson. Damages as a result of the breach of contract were claimed in the sum of $22,694.58, which by amendment to the declaration was subsequently increased to $22,715.27. Defendants answered denying any breach of contract on the part of Bateson and also denying that plaintiff had sustained any damages as a result of the alleged breach. Following a trial before the circuit judge without a jury judgment was entered for the plaintiff in the sum of $7,503.45, which was the sum that plaintiff had claimed in December, 1955, in his proposed accounting with defendants. Motion for a new trial submitted by defendants was denied, whereupon they appealed from the judgment entered, and plaintiff cross-appealed asserting that the trial court was in error in not granting a judgment in the full amount claimed in the declaration.

It is the claim of defendants-appellants that the failure on the part of Bateson to complete the work called for by the subcontract with plaintiff resulted from the failure of the latter to seasonably start and complete his part of the work. The claim is not without merit. As before noted, the contract between Wright and Bateson was executed June 25, 1955. As shown by the testimony of engineer Belsheim, the Wright Construction Company did not start placing stone until July 21st following. Apparently there was trouble in properly compacting the stone used and in holding it in position. Bateson started the application of the bituminous material on July 29th, which material, as before stated, was furnished by Wright. At first, asphalt emulsion was employed, for which refined asphalt was later substituted, the record suggesting that there was some experimentation, with consequent delay for which Wright was chargeable. The record before us

justifies the conclusion that both parties were at fault and that the delay occurred because of developments over which Bateson did not have full control. In any event, the record fails to show with sufficient clarity specific items of damage to plaintiff because of the fact that the contract was not completed by September 1st.

In his declaration plaintiff did not refer to the supplemental agreement of September 6, 1955, which by its terms remained in full force and effect until the completion of the work. The undertaking is significant in that it required plaintiff to furnish such supplementary equipment as might be necessary to finish the work by the completion date fixed by the Ohio Turnpike Commission. According to the provision of subdivision 4 of this supplemental undertaking, above quoted, plaintiff was required to pay Bateson in accordance with unit prices specified in the original subcontract. Materials, however, were not to be charged to Bateson and from the payments made deductions were authorized covering "equipment rental, cost of supervision and miscellaneous expenses." It may be assumed that this provision of the undertaking was carried out. Whether the bill of particulars relied on by plaintiff on the trial contained items that were, or may have been, taken care of in the manner suggested by the express provision of the supplemental agreement is not clear. The conclusion cannot be avoided that the proofs in the record before us do not establish specific items of damage sustained by plaintiff because of the alleged breach of contract on the part of Bateson. It is obvious that the claims advanced by plaintiff might have been incurred had there been no delay in performance.

This brings us to a consideration of the principal question involved in the controversy between the parties. As before noted, the contract of June 25,

1955, made specific reference to quantities of materials used above the average of the maximum and minimum amounts stated in the specifications prescribed by the Turnpike Commission, it being provided that all quantities over such average should be charged against Bateson. We are not informed by proper proof with reference to the average amount of bituminous materials specified in the agreement between the Ohio Turnpike Commission and the general contractors. Obviously we cannot accept plaintiff's bill of particulars in lieu of proper proof. However, the declaration under which plaintiff seeks to recover in this case does not allege a breach of contract with reference to the quantity of materials used by Bateson. Nor is there any claim that plaintiff was damaged with respect to obligations for the payment of overruns for which, possibly, he may have been held liable as a result of the breaches of contract actually set forth. On the theory of the declaration, and the specific averments thereof, plaintiff is not entitled to recover in this action because of possible failure on defendants' part to meet such obligations, if such there were. It is settled law that the scope of a declaration may not be broadened by a bill of particulars. *Gilmer* v. *Miller*, 319 Mich 136, 141, and prior decisions there cited.

With reference to the claim that Bateson did not properly schedule delivery of materials it is significant to note that the testimony in the case tends to establish that plaintiff, prior to August 31, 1955, exercised active supervision over the operations in connection with the paving of the shoulders of the turnpike, even to the extent of giving directions to Bateson's employees. It is of further significance that superintendent Jones after taking over supervision of the work covered by plaintiff's contract with the general contractors, as he testified, assumed

the task of scheduling the materials used on the job. There is no sufficient proof in this record for an awarding of damages to plaintiff on the basis of such alleged breach on the part of Bateson.

The issues in the case are factual in nature. For reasons not material here there was unfortunate delay in bringing them to trial. The pretrial hearing was not conducted until February, 1960, and the taking of the proofs was completed on October 24, 1961. It is an action for damages for alleged breach of contract rather than a suit for an accounting. On the record we are brought to the conclusion that the plaintiff has not established his right to recover damages, and accordingly the judgment of the circuit court is reversed and the case remanded with directions to enter verdict and judgment in favor of the defendants.

DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.